CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
5/16/2019
JULIA C. DUDLEY, CLERK
BY: s/ CARMEN AMOS
      DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# LYNCHBURG DIVISION

| | |
|---|---|
| LAURA G.[1], | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No. 6:18CV40 |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION

Plaintiff Laura G. ("Laura") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for supplemental security income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Laura alleges that the Administrative Law Judge ("ALJ") erred by failing to properly: (1) determine her mental RFC, including accounting for her moderate impairments in concentration, persistence, or pace, and providing a proper hypothetical to the vocational expert; (2) evaluate the opinion of the consultative examiner; (3) assess her allegations regarding her symptoms; and (4) determine her physical RFC using a function-by-function analysis.

I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **RECOMMEND DENYING** Laura's Motion for Summary Judgment (Dkt. No. 14) and **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. No. 16).

---

[1] Due to privacy concerns, I am adopting the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that courts use only the first name and last initial of the claimant in social security opinions.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Laura failed to demonstrate that she was disabled under the Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Laura filed for SSI in June 2013, claiming that her disability began in September 1969,[3] due to pain in her back, neck, left leg, and right wrist, and numbness in her left leg and right wrist, post carpal tunnel release on her left wrist, hypothyroidism, breathing problems, borderline intellectual functioning, and depression.[4] R. 349, 379, 383. The state agency denied Laura's claim at the initial and reconsideration levels of administrative review. R. 183–94, 196–208. A hearing was held before ALJ Mary C. Peltzer on June 9, 2016, where Laura was represented by counsel, and vocational expert Kathryn MacTweedy testified. R. 80–112. Following the June

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[3] Laura indicated her birth date as her disability onset date. However, Laura also indicated that she stopped working on May 30, 2009. The ALJ concluded that she had not been under a disability since June 2013, the date Laura filed her application for SSI. R. 12.

[4] Laura was 47 years old on the date of the ALJ's opinion, which is considered a younger individual under the Medical Vocational Guideline. R. 20.

2016 hearing, the ALJ requested a consultative examination, which occurred on July 21, 2016. R. 11, 636–46. Thereafter, a supplemental hearing occurred on February 23, 2017, where Laura was again represented by counsel and which included testimony from vocational expert Ruth Fast. R. 66–79. On April 7, 2017, the ALJ entered her decision considering Laura's claim under the familiar five-step process[5] and denying her claim for benefits. R. 11–21.

The ALJ found that Laura suffered from the severe impairments of asthma, obesity, sciatica, left carpal tunnel syndrome, status post release, and borderline intellectual functioning.[6] R. 13. The ALJ determined that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 14–15. Specifically, the ALJ considered listing 1.04 (disorders of the spine), listing 3.03 (asthma), listing 11.14 (peripheral neuropathy), and listing 12.11 (neurodevelopmental disorders). Id. The ALJ found that, regarding her mental impairments, Laura had mild limitations in understanding, remembering, or applying information, and in interacting with others, and moderate limitations in concentration, persistence, or pace. R. 15–16. The ALJ noted that Laura's activities of daily living suggest she can follow and carry out one to two step tasks, use reason and judgment, and solve problems. R. 16. The ALJ found no limitations in adapting or managing oneself. Id.

---

[5] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[6] The ALJ determined that Laura's allergic rhinitis, gastroesophageal reflux disease, hypothyroidism, headaches, hypertension, and mood disorder, were not severe impairments. R. 13–14.

The ALJ concluded that Laura retained the residual functional capacity ("RFC") to perform a limited range of sedentary work. R. 17. Specifically, the ALJ found Laura required a cane to walk and can never use foot controls or push and pull with her lower extremities. Id. Laura can only occasionally climb stairs and ramps or balance or stoop, and can never climb ladders, ropes, or scaffolds, or kneel, crouch, or crawl. She can have occasional exposure to extreme cold, extreme heat, wetness, humidity, respiratory irritants such as dust and fumes, and workplace hazards such as dangerous moving machinery. Laura can perform only unskilled work at SVP 1 or 2 involving simple, routine tasks, and no independent goal setting or decision-making. Id. The ALJ determined that Laura has no past relevant work, but she could perform jobs that exist in significant numbers in the national economy, such as document preparer, addresser, and lens inserter. R. 21. Thus, the ALJ concluded that Laura was not disabled. Id. Laura appealed and the Appeals Council denied her request for review on February 6, 2018. R. 1–4.

## **ANALYSIS**

Laura alleges that the ALJ failed to properly: (1) determine her mental RFC, including accounting for her moderate impairments in concentration, persistence, or pace, and providing a proper hypothetical to the vocational expert; (2) evaluate the opinion of the consultative examiner, William Humphries, M.D.; (3) assess her allegations regarding her symptoms, including pain; and (4) determine her physical RFC using a function-by-function analysis.

**A. Medical History**

1. Physical Impairments

Laura has a history of complaints of low back pain and hip pain, following injury in a motor vehicle accident in 2006, and she reports using a cane since the accident. R. 461, 636. She

4

also had left-side carpal tunnel release surgery in 2008. R. 636. Laura filed her disability application in June 2013, which began the relevant period. In July 2013 Laura was treated for complaints of hip and leg pain, including her leg "locking up," but on examination showed full range of motion, normal strength, and normal gait. R. 461–62. At follow up visits in 2013 through 2015 she generally reported doing well, but with continued hip and leg pain and continued use of a cane. R. 511, 539, 541, 585–86. An X-ray of her lumbar spine in July 2016 showed "no evidence of fracture or malalignment" and "no significant degenerative change." R. 634.

    2. <u>Mental Impairments</u>

Laura presented for routine mental health treatment appointments with Horizon Behavioral Health every few months from the relevant period in 2013 through 2016.  She carried a diagnosis of a mood disorder, but was generally found to be doing well, often in a good mood, reportedly staying busy (including enjoying her grandchildren and caring for multiple dogs and cats), and noted to have stable mood, logical and goal-directed thought processes, normal cognition, and intact memory. R. 509, 511, 551, 553, 592, 596, 598, 600, 602, 604, 608. In October 2015 and February, August and October 2016, she was assigned a GAF score of 65.[7] R. 592, 598, 657, 651–53.

    3. <u>Medical Opinion Evidence</u>

In April and September, 2014, respectively, state agency doctors Gene Godwin, M.D. and Robert McGuffin, M.D., reviewed the record and found that Laura was capable of a limited range of light work. R. 190–93, 203–207. In April 2014, state agency psychologist Eric Oritt,

---

[7] The GAF Scale is used by mental health professionals to rate overall functioning and considers the psychological, social, and occupational functioning of an individual on a hypothetical continuum of 1 to 100. American Psychiatric Association, <u>Diagnostic and Statistical Manual of Mental Disorders</u> 34 (4th ed. Rev.2000) (DSM IV ), with 100 being the most high-functioning. A GAF score of 61 to 70 indicates mild symptoms or difficulty. The GAF has been dropped from the Fifth Edition of the DSM, published in 2013.

5

Ph.D. reviewed the record and found no restriction of activities of daily living, no difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace, and no repeated episodes of decompensation. R. 189. Dr. Oritt concluded that Laura's mental impairments were non-severe, noting that her mood disorder has been stable for years and she appears to be of average intelligence, even though she is at the "borderline level of intellectual functioning," with no memory or cognitive impairments. Id. In September 2014, state agency psychologist Louis Perrott, Ph.D., also reviewed the record and concluded that Laura had no restrictions in activities of daily living, no difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no repeated episodes of decompensation. R. 201. Dr. Perrott found that Laura was moderately limited in her ability to understand and remember detailed instruction due to her borderline intellectual functioning, but that she was able to perform and sustain simple tasks and remember location or work-like procedures with no special supervision. R. 205–206.

On July 20, 2016, Dr. Humphries performed a consultative physical examination. R. 636–46. Dr. Humphries noted 5/5 grip on the right hand, and 4.5/5 on the left, with negative Tinel's on the right and weakly positive on the left, no sensory loss to light touch, and adequate fine manipulation. He also found mildly antalgic gait, normal strength in all four extremities, and no motor or sensory loss in the lower extremities. Regarding her carpal tunnel syndrome, Dr. Humphries noted that Laura "has no significant symptomatology at this time." R. 636. Dr. Humphries found functional restrictions including that Laura could sit for six hours and stand or walk for two hours in an eight-hour day, frequently reach, handle, finger, and feel with her right hand, and occasionally reach, handle, finger, and feel with her left hand. R. 640–41.

**B. Mental Impairments under SSR 96-8P**

Laura argues that the ALJ failed to properly assess her mental impairments as required by SSR 96-8P. See Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996). Specifically, Laura asserts that the ALJ failed to properly address her moderate limitations in concentration, persistence, or pace, in assessing her RFC, and thus provided an incomplete hypothetical question to the vocational expert. Laura argues that the RFC addresses only the skill level of work she can perform, i.e. simple, routine, unskilled tasks, but not her ability to sustain such work over a full workday.

SSR 96-8P requires the ALJ to include a narrative discussion describing how the evidence supports his conclusions when developing the RFC. Teague v. Astrue, No. 1:10-cv-2767, 2011 WL 7446754, at *8 (D.S.C. Dec. 5, 2011). The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8P at *7; Meadows v. Astrue, No. 5:11-cv-63, 2012 U.S. Dist. LEXIS 115150, at *24, 2012 WL 3542536, at *8 (W.D. Va. Aug. 15, 2012) (citing Davis v. Astrue, No. 9-cv-2545, 2010 U.S. Dist. LEXIS 132972, at *15-16, 2010 WL 5237850, at *5 (D. Md. Dec. 15, 2010)); Monroe v. Colvin, 826 F.3d 176, 189, (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often).

In Mascio v. Colvin, the Fourth Circuit held that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.' " 780 F.3d 632, 638 (4th Cir. 2015) (quoting

Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). The Fourth Circuit emphasized the distinction between the ability to perform simple tasks and the ability to stay on task, stating that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. Although the Fourth Circuit noted that the ALJ's error might have been cured by an explanation as to why the claimant's moderate difficulties in concentration, persistence, or pace did not translate into a limitation in the claimant's RFC, it held that without such an explanation, remand was necessary. Id. Thus, while Mascio does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC, it does underscore the ALJ's duty to adequately review the evidence and explain the decision. This is especially so where, as the ALJ held in Mascio, a claimant's concentration, persistence, or pace limitation does not affect the ability to perform simple, unskilled work. See also Monroe, 826 F.3d 176 (emphasizing that the ALJ must provide a sound basis for his ruling, including discussing what evidence he found credible and specifically apply the law to the record).

This is not a situation like Mascio, where the ALJ summarily concluded that a limitation to simple, unskilled work accounts for the claimant's moderate impairment in concentration, persistence and pace without further analysis. Unlike the claimant in Mascio, the medical evidence here supports the ALJ's conclusion that, despite her moderate limitations in concentration, persistence, or pace, Laura is capable of performing the basic mental demands of sedentary work, with the specified accommodations. Here, the ALJ explained why Laura's moderate impairment in concentration, persistence, or pace did not translate into a limitation in the RFC beyond unskilled, simple, routine tasks, with no independent goal setting or decision-making. The ALJ adequately supported her finding that Laura was able to sustain her unskilled,

8

simple, routine tasks over a normal workday, without a corresponding limitation for pace. Further, the ALJ accounted for Laura's moderate impairment in concentration, persistence, or pace in her hypothetical question to the VE and the RFC finding in her ruling. The ALJ's hypothetical question and RFC assessment included limitations of unskilled work in an SVP of 1 or 2, involving simple, routine tasks, and no independent goal setting or decision making. R. 17, 75.

The ALJ found that Laura had moderate limitations in concentration, persistence, or pace, noting that "this area refers to [Laura's] ability to focus attention on work activities and stay on task at a sustained rate." R. 16. The ALJ concluded these moderate limitations would not prevent Laura from working, and that Laura was capable unskilled work involving simple, routine tasks, and no independent goal-setting or decision making. R. 17. The ALJ wrote:

> While [Laura] has borderline intellectual functioning and difficulties concentrating, she cooks, cleans, watches television, reads for pleasure, pays bills, handles a checking account, shops for groceries, and cares for her disabled husband, which involves making sure he has his meals and takes his medication, all of which requires some concentration, persistence, and/or pace.

R. 16. Later in her opinion, the ALJ further explained why Laura did not need additional limitations related to an ability to stay on task, writing:

> [Laura's] borderline intellectual functioning and concentration deficits support limiting her to unskilled work. However, her negative findings, lack of aggressive treatment, i.e., injection therapy or surgery, and her retained abilities to care for her personal needs, cook, clean, care for her disabled husband, ship, pay bills, handle a checking account, read, watch television, and spend time with her daughter and grandchildren suggest she requires no greater limitations.

R. 18. The ALJ also gave great weight to Dr. Perrott, stating that his conclusion that Laura is limited to "simple tasks is consistent with her borderline intellectual functioning and her concentration issues." R. 19. In fact, Dr. Perrott specifically concluded that even though Laura had moderate limitations in concentration, persistence, and pace, she was able to, not only

9

perform simple tasks, but "*sustain* simple tasks" over a normal workday and workweek.[8] R. 206 (emphasis added). Finally, the ALJ noted that, despite her mood disorder, on exam, Laura consistently showed logical and goal directed thought processes, normal thought content and cognition, intact memory and average intelligence. R. 13. Here, the ALJ found moderate limitations in concentration, persistence, or pace, but also found that no corresponding limitation in the ability to stay on task. This outcome is specifically contemplated by Mascio – provided the ALJ explains her reasoning. The ALJ's reasoning here rests on the opinion of the state agency doctor, and a consideration of the record evidence, and this court is not "left to guess about how the ALJ arrived at [her] conclusions."[9] Mascio, 780 F.3d at 637; see also Massey v. Colvin, No. 1:13-cv-965, 2015 U.S. Dist. LEXIS 79708, at *20, 2015 WL 3827574, at *7 (M.D.N.C. June 19, 2015); Hutton v. Colvin, No. 2:14-cv-63, 2015 U.S. Dist. LEXIS 77846, at *8, 2015 WL 3757204, at *3 (N.D. W. Va., June 16, 2015). As such, I conclude that substantial evidence supports the ALJ's conclusions regarding Laura's RFC.

### C. Opinion of Consultative Examiner

Laura asserts that the ALJ erred by failing to adequately discuss Dr. Humphries's opinion regarding her manipulative limitations, specifically that she can only occasionally reach in all directions, handle, finger, feel, and push/pull with her left upper extremity. The Commissioner counters that the ALJ "carefully considered the opinions of record" including Dr. Humphries's opinion. D's Br. at 15, Dkt. No. 17.

---

[8] Dr. Perrot also found that Laura does not require special supervision, can maintain attendance, and can work in proximity to others. R. 206.

[9] Laura argues that this case is similar to Rice v. Comm'r, Soc. Sec. Admin., No. CV SAG-16-2582, 2017 WL 2274947, at *3 (D. Md. May 24, 2017), where the court remanded to the Commissioner, noting the cursory analysis by the ALJ, which "entirely fails to address Ms. Rice's ability to sustain work over an eight-hour workday." However, here, the ALJ provided a sufficient analysis, and discussed the medical records showing intact memory and the ability to sustain simple tasks. R. 13, 16, 18.

The regulations require an ALJ to evaluate a one-time evaluator, such as consultative evaluator Dr. Humphries, using the factors outlined in the regulations, and to expressly indicate and explain the weight he or she accords to such opinions. See 20 C.F.R. §§ 404.1527(c), 416.927(c).[10]

Here, the ALJ appropriately considered the factors and the record, in determining the weight to give to the opinion of Dr. Humphries, and adequately explained why she did not adopt Dr. Humphries's manipulative limitations. The ALJ gave Dr. Humphries's opinion partial weight, writing that "while [Dr. Humphries] recognizes [Laura's] need for restrictions his limitation to the light exertional level is inconsistent with her low back pain, residual carpal tunnel issues, and need for a cane, all of which support limiting her to the sedentary exertional level." R. 19. The ALJ provided further explanation earlier in her opinion, specifying that Laura's "slightly diminished grip strength and weakly positive Tinel's sign support limiting her to frequent handling, fingering, and reaching with the left upper extremity." R. 18. In support, the ALJ noted that "[d]uring her recent consultative examination, [Laura] had intact sensation and was able to perform fine manipulation adequately." Id. Thus, the ALJ considered the opinion of Dr. Humphries, together with the evidence in the record, and determined that Laura was capable of a limited range of sedentary work, including a manipulative limitation of frequent handling, fingering, and reaching with the left upper extremity. I find that substantial evidence supports the ALJ's decision to give the opinion of Dr. Humphries' partial weight.

---

[10] Different rules apply to the opinion of a treating physician for claims filed prior to March 27, 2017, such that an ALJ must give the opinion of a treating source, controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2).

**D. Subjective Allegations**

Laura argues that the ALJ's assessment of her allegations regarding her limitations is not supported by substantial evidence. Specifically, Laura complains that the activities of daily living the ALJ referenced to support her finding that Laura is not disabled do not actually show she is capable of completing an eight-hour workday, including cooking, cleaning, and maintaining personal care.[11]

Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. Soc. Sec. Ruling 16-3p Titles II & Xvi: Evaluation of Symptoms in Disability Claims,[12] SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c).[13] First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms, such as pain.[14] Id. at *3, §§ 404.1529(b), 416.929(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to

---

[11] Laura also reiterates in this section several of the arguments she raised earlier in her brief, including arguments related to her ability to stay on task, and Dr. Humphries's opinion; however, I need not address these arguments again.

[12] In March 2016, the Social Security Administration superseded the language of SSR 96-7P when it ruled in SSR 16-3P that "credibility" is not appropriate terminology to be used in determining benefits. See Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P (S.S.A. Mar. 16, 2016) (effective March 28, 2016).

[13] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

[14] SSR 16-3p states that a claimant must provide "objective medical evidence from an acceptable medical source to establish the existence of a medically determinable impairment that could reasonably be expected to produce [the] alleged symptoms." Id. Objective medical evidence consists of medical signs ("anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques") and laboratory findings "shown by the use of medically acceptable laboratory diagnostic techniques." Id.

determine the extent to which they limit the claimant's ability to work. Id. §§ 404.1529(c), 416.929(c). In making that determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id.

The ALJ's opinion includes a discussion of Laura's medical history, along with Laura's own allegations, and the ALJ adequately supported her finding that Laura's allegations were not entirely consistent with the medical evidence and other evidence in the record. The ALJ noted Laura's testimony regarding her limitations, including back pain, leg and hand numbness, breathing difficulties, and balance disturbances. However, the ALJ wrote:

> [Laura's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Laura's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

R. 18. In support, the ALJ carefully addressed Laura's allegations regarding her impairments, each in turn. The ALJ acknowledged that Laura had a "longstanding history of low back pain" but noted that her "objective findings have been relatively benign" including normal x-rays in 2012, and generally normal findings on exam, with the exception of episodic tenderness and moderate antalgia. Id. Regarding Laura's carpal tunnel issues, the ALJ noted her allegations of residual numbness and difficulty using her hands, but emphasized that on exam she had only slightly diminished grip strength, and a "weakly" positive Tinel's sign, including her consultative exam which showed intact sensation and the ability to adequately perform fine manipulation. Id. The ALJ also found that Laura's asthma did not cause symptoms as severe as alleged, noting that Laura "only occasionally requires a rescue inhaler" and that "for the most part her lungs have

13

been clear with normal breath sounds." Id. The ALJ concluded that these negative findings, combined with a lack of aggressive treatment, such as injection therapy or surgery, and the fact that Laura was still able to "care for her personal needs, cook, clean, care for her disabled husband, shop, pay bills, handle a checking account, read, watch television, and spend time with her daughter and grandchildren," all supported an ability to perform a limited range of sedentary work.[15] Id.

Laura also points to Brown, 873 F.3d 251, to support her argument that the ALJ fails to acknowledge that the "various activities performed by [Laura] . . . are performed intermittently at [her] own pace or at times, not at all" and does not explain how these activities show she is capable of completing a full workday. Pl.'s Br. at 14, Dkt. No. 15. In support, Laura references her hearing testimony before the ALJ on February 23, 2017, including that she "spends approximately 50% of the day lying down due to her pain" and that her husband takes care of most of their animals, and that she often takes breaks. Id. at 14. However, during the February 23, 2017 hearing, Laura testified as follows in response to her counsel's questions:

> Q: And at the last hearing, Ms. Green, you said that you were spending about 50% of the time lying down in the day, and I understand you husband's had these health issues, are you still having to lie down during the day?
> A: I can't do that no more. I have to – I'm sitting in a chair. I have to stay there – I sit in a chair all day. As soon as I get up around about this time every morning and stay up until 10:00 at night keeping an eye on my husband, I can't do what I used to do to relax or anything. I have a dog that likes to keep me on my toes and I'm trying not to get, you know, to put her out every hour on the hour and it's just wearing me out.
> Q: I was going to say, how is that making you feel not being able to lie down and rest?
> A: It frustrates me, but I just grin and bear it and go on.

---

[15] Laura's did have left-side carpal tunnel release surgery in 2008; however, this was years prior to her 2013 application date for SSI. R. 636.

14

R. 73.[16] While Laura complained that her sciatica was getting worse, she also testified that she had "been doing most of the housework" without any help since her husband got out of the hospital. R. 71. Further, this case is distinguished from Brown, where the Fourth Circuit concluded that the ALJ had committed multiple errors, including failing to acknowledge the extent of the daily activities of living, writing:

> With respect to the first reason for the adverse credibility finding, the ALJ noted that Brown testified to daily activities of living that included "cooking, driving, doing laundry, collecting coins, attending church and shopping." See Second ALJ Decision 11. The ALJ did not acknowledge the extent of those activities as described by Brown, e.g., that he simply prepared meals in his microwave, could drive only short distances without significant discomfort, only occasionally did laundry and looked at coins, and, by the time of the second ALJ hearing, had discontinued regular attendance at church and limited his shopping to just thirty minutes once a week. Moreover, the ALJ provided no explanation as to how those particular activities—or any of the activities depicted by Brown—showed that he could persist through an eight-hour workday.

873 F.3d at 263. While, here, as asserted by Laura, the ALJ did mention in her opinion some activities of daily living that arguably do not show that Laura could "persist through an eight hour workday," unlike in Brown, the ALJ pointed to more than those daily activities to discount Laura's subjective allegations, her treatment record objective medical evidence.[17] Beyond these activities of daily living, the ALJ noted that Laura's allegations were inconsistent with her medical records, including often negative findings on examination and lack of aggressive treatment. R. 18. Laura's allegations of disability were also inconsistent with the conclusions of the state agency doctors, the consultative examiner, and the 2012 opinion by another ALJ denying disability. R. 18–20. Finally, the ALJ may properly rely on evidence regarding a

---

[16] It appears that plaintiff may have intended to cite to her testimony during the June 9, 2016 hearing before the ALJ.

[17] Also, unlike in Brown, the ALJ here did not fail to consider any doctor's opinions, or wrongly credit a psychiatric medical expert's testimony over the "consistent opinions of [five] treating and examining sources" who found disabling physical limitations. Brown, 873 F.3d at 266.

15

plaintiff's routine, non-work activities in rejecting a claim of disability. See Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005).

It is for the ALJ to determine the facts of a particular case and to resolve inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996); see also Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight). The ALJ's opinion was thorough and applied the proper legal standard, and I will not re-weigh the evidence. Accordingly, I conclude that the ALJ supported her analysis of Laura's subjective complaints with substantial evidence, and that Laura is capable of performing work at the level stated in the ALJ's opinion.

### E. Physical RFC and Function-by-Function Analysis

Laura argues that the ALJ's physical RFC findings are not supported by substantial evidence, specifically regarding her ability to maintain a static work posture, her need to lie down and rest during the day, and her difficulty using her left upper extremity and hand. Laura emphasizes her testimony during the first hearing that she can stand or sit only five to ten minutes at a time, she spends "approximately 50% of her day lying down due to her pain," and she "has difficulty using her hands and drops things when she tries to use them." Pl.'s Br. at 10, Dkt. No. 15. However, these arguments amount to disagreements with the ALJ's RFC determination and essentially ask the court to reweigh the evidence.

A function-by-function analysis requires the ALJ to develop an adequate RFC which accounts for the work activities the claimant can perform given the physical or mental impairments affecting his ability to work. Importantly, the ALJ must explain the conclusions

reached and explain any record evidence which contradicts the RFC determination. See SSR 96-8p; see also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that an ALJ needs to provide an explicit explanation linking medical evidence listed in the decision to his ultimate findings). The ALJ is instructed to cite specific medical facts and non-medical evidence supporting his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8p, 1996 WL 374184, at *7.

In Mascio v. Colvin, the court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," agreeing instead with the Second Circuit that "'[r]emand may be appropriate ... where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Mascio, 780 F.3d at 636 (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). "The Mascio Court held remand was necessary, in part, because the ALJ failed to indicate the weight given to two residual functional capacity assessments which contained relevant conflicting evidence regarding the claimant's weight lifting abilities." Newcomb v. Colvin, No. 2:14–CV–76, 2015 WL 1954541, at *3 (N.D.W. Va. Apr. 29, 2015).

Here, the ALJ's decision includes the narrative discussion required by SSR 96-8p, and contains sufficient information to allow meaningful review. Unlike the ALJ in Mascio, the ALJ in this case did not fail to consider conflicting medical evidence. Further, the court is "not left to guess about how the ALJ arrived at his conclusions" because the ALJ's findings include an

17

analysis of Laura's medical records, the medical opinions, Laura's hearing testimony and the ALJ's conclusions. R. 17–21. The RFC sets out Laura's exertional limitations, including the amounts of weight she can lift and/or carry, amounts of time she can perform activities such as standing and walking, and hazards she must avoid, as well as her mental limitations. Laura complains that the ALJ found she had the severe impairments of asthma, obesity, sciatica, and left carpal tunnel syndrome, status post release, but "did not determine on a function-by-function basis how they affect her ability to work." Id. at 9. However, the ALJ's opinion provides an extensive discussion of Laura's medical record, and explicitly specifies how the limitations in the RFC correlate with her severe impairments. R. 18. The ALJ writes:

> [C]onsidering [Laura's] low back pain, residual carpal tunnel issues, need for a cane, and obese body habitus, I limited her to less than a full range of sedentary work. [Laura's] slightly diminished grip strength and weakly positive Tinel's sign support limiting her to frequent handling fingering, and reaching with the left upper extremity. Her situational asthma supports limiting her exposure to known pulmonary irritants, such as temperature extremes, wetness, humidity, dust, and fumes.

R. 18. Accordingly, I find that substantial evidence supports the ALJ's RFC determination.

## CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case Norman K. Moon, Senior United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any

adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including the waiver of the right to appeal.

                                      Entered: May 15, 2019

                                      *Robert S. Ballou*

                                      Robert S. Ballou
                                      United States Magistrate Judge